NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHAEL E. MITCHELL,

          Petitioner,

v.

WARDEN JOHN POWELL, *et al.*,

          Respondents.

Civil Action No. 21-20588 (MAS)

OPINION

**SHIPP, District Judge**

This matter comes before the Court on Petitioner's amended petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. (ECF No. 7.) Following an order to answer, Respondents filed a response to the amended petition (ECF No. 18), to which Petitioner replied (ECF Nos. 25, 27). For the following reasons, the Court denies the amended petition and denies Petitioner a certificate of appealability.

**I.    BACKGROUND**

In its opinion affirming Petitioner's conviction on direct appeal, the Superior Court of New Jersey, Appellate Division, summarized the factual background of Petitioner's conviction as follows:

> The State's case rested primarily on the testimony of two witnesses: the manager of the Radio Shack store in Franklin Township that was robbed; and Emendo E. Bowers, [Petitioner]'s accomplice in the robbery.
>
> The manager testified that shortly after he opened the store on October 20, 2011, Bowers and [Petitioner] entered and inquired about cell phones. No one else was in the store. Soon thereafter,

Bowers displayed a handgun and [Petitioner] demanded to see the safe. The manager said there was no safe, but offered the men high-end electronics products kept in a locked "cage" in the rear of the store. Bowers handed the gun to [Petitioner] and retrieved shopping bags. After the manager loaded the bags with laptops and other products, the three returned to the front of the store, where Bowers and [Petitioner] demanded cash from the register and other items on display. They then fled, after [Petitioner] directed the manager to return to the rear of the store and count to 100. After counting to about thirty, the manager safely returned to the front of the store, locked the door, and called the police. He spotted [Petitioner and Bowers] head toward a red hatchback, a "Toyota Matrix maybe."

The manager said that as the robbery unfolded, he was scared and afraid he would be killed. He described the men as African-American, around twenty-five years old, and between five feet ten inches, and six feet tall. One wore a black and white hoodie, the other a brown or solid colored one. The manager could not identify [Petitioner] because the men wore large sunglasses and the hoods obscured their faces. The Radio Shack store did not have its own video surveillance, and no fingerprints or other identifying evidence was found at the scene.

Bowers and [Petitioner] were arrested in Middlesex County on unrelated charges in January 2012. Bowers eventually admitted to police that he participated in the Radio Shack robbery. After a prolonged interrogation, Bowers implicated [Petitioner]. He did so only after he first contended, and then recanted, that three other men, including [Petitioner]'s brother, committed the robbery with him.

Bowers testified at trial that [Petitioner]'s girlfriend drove him and [Petitioner] to the shopping center in a red hatchback. They first browsed in the K-Mart store at the shopping center, before entering the Radio Shack store. Bowers identified himself and [Petitioner] on video surveillance taken inside the K-Mart and in front of a jewelry store, located between the K-Mart and the Radio Shack. The video depicted two African-American men, one in a gray hoodie, who Bowers identified as himself, and another in a black and white hoodie, who Bowers identified as [Petitioner].

Bowers generally corroborated the manager's testimony, although he downplayed his role and differed as to some details. He denied that he possessed a handgun and claimed that the firearm [Petitioner] possessed was a pellet gun. Cross-examination highlighted the inconsistencies in Bower's [sic] statement to police, including his

2

> incrimination of others and his motive to provide favorable testimony in return for leniency.
>
> A woman, who claimed to have been [Petitioner]'s girlfriend in October 2011, testified that [Petitioner] often borrowed her red Matrix, although she could not be sure whether he did so on the day of the robbery. Cross-examination elicited her prior statement to police that she owned a Toyota Corolla, not a Matrix, in 2011.
>
> [Petitioner] did not testify or present other witnesses. The defense theory was that Bowers was a liar, who was out to save himself. In summation, defense counsel also argued that the video recordings did not clearly depict [Petitioner] and could well have depicted any of the other three men Bowers previously claimed committed the robbery, including [Petitioner]'s brother. By contrast, the prosecutor highlighted video excerpts during her summation, urging the jury to find they depicted [Petitioner].
>
> During its deliberations, the jury twice reviewed the K-Mart video. [It] found [Petitioner] guilty of robbery, as charged in the single-count indictment, specifically finding that [Petitioner] was armed.

(ECF No. 7-2 at 1-5.)

## II.     **LEGAL STANDARD**

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846-47 (3d Cir. 2013). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is expressed in "only the holdings, as opposed to the dicta[,]" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. DISCUSSION

#### A. Petitioner's Sufficiency of the Evidence Claim

In his first claim, Petitioner contends that there was insufficient evidence to support his conviction for armed robbery as no testimony at trial demonstrated that he used force against the Radio Shack manager as part of the robbery. The Appellate Division rejected this claim on direct appeal. First, the Appellate Division determined that although Petitioner had been charged with, and the jury was instructed on, armed robbery through force, the evidence at trial was more than sufficient to support a conviction on the alternative basis of armed robbery by threat. (*See* ECF No. 7-2 at 7-10.) While robbery by threat was not specifically charged, it was well supported and

4

would have been properly charged had the State requested the trial court to do so. (*See id.*) The Appellate Division also rejected this claim because the element of "force" in armed robbery through use of force encompasses coercion through a threatened use of force, and thus there was sufficient evidence to support his conviction of armed robbery in any event. (ECF No. 7-2 at 8-9.) Finally, the Appellate Division found that the claim was procedurally barred because the claim was raised for the first time on appeal, and such a claim is barred if raised on appeal without having previously been raised in a motion for a new trial. (*Id.* at 7-8.)

When a habeas petitioner presents a claim challenging the sufficiency of the evidence produced at trial, "a reviewing court must ask 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Eley*, 712 F.3d at 847 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A court sitting in habeas review may therefore overturn a conviction based on insufficient evidence only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 324). Under this "deferential federal standard," juries have "broad discretion in deciding what inferences to draw from the evidence presented at trial" and federal courts must not "unduly impinge[] on the jury's role as factfinder" by engaging in "fine-grained factual parsing." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012).

As explained by the Appellate Division, Petitioner's crime of conviction—first degree armed robbery—requires that the Petitioner committed a theft of property from another either through a use of force or threat of force, while armed with or threatening the use of a deadly weapon. (ECF No. 7-2 at 7-8.) Once the jury concluded, based on testimony and video evidence, that Petitioner was one of the two individuals involved in the robbery, the testimony provided at trial clearly demonstrated that Petitioner and his co-defendant used the threat of physical force in

5

the form of a deadly weapon, specifically a firearm,[1] to take from the Radio Shack a number of items of significant monetary value. Thus, there was sufficient evidence in the record to support each of the elements of first-degree armed robbery, either under a robbery by threat standard or a robbery by force standard, which the Appellate Division found encompassed force in the form of the threat to use a deadly weapon. Here, Petitioner's challenge to the sufficiency of the evidence against him must fail because: (1) the Appellate Division found that either alternative basis was sufficient to support Petitioner's guilt under state law; (2) the jury found all of the necessary elements in this case; and (3) a reasonable juror certainly could have found Petitioner guilty under these circumstances. Petitioner's sufficiency claim thus provides no basis for habeas relief.

The Court further notes that, even if Petitioner's sufficiency of the evidence claim was of greater merit, it remains procedurally defaulted. Pursuant to the procedural default doctrine, "federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." *Dretke v. Haley*, 541 U.S. 386, 392 (2004). Habeas courts may therefore not review the wisdom of state law procedural bars, and generally may not grant relief on "a procedurally-defaulted claim if the state court opinion includes a plain statement indicating that the judgment rests on a state law ground that is both 'independent' of the merits of the federal claim and an 'adequate' support for the court's decision." *Campbell v. Burris*, 515 F.3d 172, 176 (3d Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). A habeas petitioner may only obtain relief on a claim which has been procedurally barred by either showing cause and actual prejudice for the default, or that he is actually innocent of the crime for which he was convicted. *Dretke*, 541 U.S. at 393. Here, the Appellate Division explicitly found the claim barred under state law as it had not previously been raised in a motion for a new trial, and found no basis

---

[1] Although Petitioner's co-defendant suggested the weapon was a pellet gun, the jury explicitly found that Petitioner was armed with a deadly weapon. (*See* ECF No. 7-1 at 15.)

for waiving that adequate and independent state ground. As Petitioner has not even attempted to show actual innocence or cause and prejudice for his failure to raise the claim prior to his appeal, he has shown no basis for evading his procedural default, and this claim would be barred even if it was not meritless.

B.  **Petitioner's Jury Instruction Claim**

Petitioner next asserts that the trial court erred in failing to craft a novel identification jury instruction to guide the jury's viewing of surveillance footage when assessing whether the footage depicted Petitioner. The Appellate Division rejected this claim, finding that defense counsel first raised the issue while deliberations were ongoing and discussions were held as to how the jury would view the surveillance video. (ECF No. 7-2 at 11-15.) The Appellate Division found that the trial judge's denial of the request in this context, and as the basis for a motion for a new trial, was not improper as the identification charge is generally only given to guide a jury's interpretation of how well a third-party witness could have identified a criminal defendant, and was largely irrelevant to the jury's *own* viewing of video footage and any conclusions it drew from that footage. (*Id.*) The jury, the Appellate Division concluded, was more than capable of determining how well it could identify Petitioner from the video without a special instruction. Elements such as memory, distance of view, length of time of viewing, and the like, which are relevant in identification cases, are simply not applicable to free and repeat viewing of a recorded video by a jury.

That a jury "instruction was allegedly incorrect under state law is not a basis for habeas relief." *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir. 2001) (quoting *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)), *cert. denied*, 534 U.S. 919 (2001). A habeas petitioner will not be entitled to relief based on an allegation of improper jury instructions at trial unless "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). The Supreme Court has held that the "category

7

of infractions that violate fundamental fairness" is very narrow, *Estelle*, 502 U.S. at 72-73, and challenged jury instructions must be considered in the context of the entire charge and the trial as a whole, with habeas relief available only in cases in which the charge was so erroneous that it resulted in a violation of Due Process in light of all the relevant facts. *Duncan*, 256 F.3d at 203. Even where an instruction is "undesirable, erroneous, or even universally condemned," habeas relief will not be warranted unless the charge rendered the trial fundamentally unfair. *Id.*

Here, the lack of a novel identification charge at Petitioner's trial did not render Petitioner's trial fundamentally unfair. In light of the full jury charge given at trial, which adequately advised the jury that it was the ultimate arbiter of facts, and the lack of relevance of the factors generally considered in the third-party identification context, Petitioner failed to demonstrate that fundamental fairness required a novel identification instruction. The jury was fully able and equipped to view and make determinations from the video, and Petitioner has not shown that the lack of the suggested identification-based charge prejudiced him in any way. As the lack of this charge did not render the trial fundamentally unfair, this claim serves as no basis for habeas relief. *Duncan*, 256 F.3d at 203.

    **C.**    **Petitioner's Ineffective Assistance of Counsel Claims**

In his remaining claims, Petitioner contends that he received ineffective assistance of counsel. The standard applicable to claims of ineffective assistance of counsel is well established:

> Claims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . .

8

> whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

Petitioner first contends that trial counsel proved ineffective in failing to object to testimony by two witnesses—his co-defendant and a detective—which Petitioner believes amounted to suborned perjury. Petitioner also contends that trial counsel proved ineffective in

9

failing to object to what Petitioner believes to have been improper vouching as to his co-defendant by the prosecutor. In affirming the denial of Petitioner's PCR petition, the Appellate Division rejected these claims as lacking any merit. Further, the prosecutor's arguments did not amount to improper vouching because they were based on the evidence in the trial record and not unspecified outside sources. Any objection would, therefore, have been without merit. (*See* ECF No. 18-34 at 20-21.)

Petitioner has failed to show that the decisions of the Appellate Division were contrary to *Strickland* and its progeny. There were certainly some discrepancies in the testimony of Petitioner's co-defendant and the co-defendant did change his story several times in speaking to police. But nothing Petitioner highlights amounts to perjury on the part of either witness. Rather, that gloss is simply Petitioner's perspective. Likewise, there is no evidence that the State was aware of any alleged misleading testimony that Petitioner's co-defendant offered at trial. Any motion based on alleged suborned perjury would therefore have been without merit. In addition, there is no evidence of improper vouching. The prosecutor argued that the witnesses in question were credible based on evidence in the trial record and not based on outside information. This argument did not amount to improper vouching. Any objection on that basis would have been without merit and counsel was not ineffective in failing to make either argument. *See United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011); *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (finding counsel cannot be ineffective by failing to file a meritless motion).

Petitioner next argues that counsel proved ineffective in not filing a motion to consolidate his trial in this matter with a superseding indictment as to several other robberies in Middlesex County for plea bargaining purposes after counsel received complete discovery. The Appellate Division rejected this claim, finding that Petitioner failed to show prejudice. As the Appellate Division noted, the two sets of charges had already been the subject of a consolidated plea offer

prior to the completion of discovery, which Petitioner rejected. Petitioner further rejected a separate plea in this matter before proceeding to trial, and Petitioner provided no basis for concluding that he would have accepted a second universal plea offer that the State never actually offered. Petitioner, the state courts concluded, therefore failed to show any likelihood that the outcome of his charge in this matter would have been any better even if counsel moved to reconsolidate the cases and proceed on them together.

Having reviewed the record, the Court finds that Petitioner has not shown that this decision was contrary to or an unreasonable application of *Strickland*. Petitioner has not shown that a second global plea offer would have been made, or that he would have accepted such an offer had the cases been reconsolidated. Indeed, his prior behavior and rejection of the plea offers that were made suggest the contrary. Petitioner likewise has not shown that his sentence would have been any less had he proceeded to trial on this charge if consolidated with the Middlesex charges. The Appellate Division's finding that Petitioner failed to show prejudice is thus well supported by the record and serves as no basis for habeas relief.

Petitioner next contends that trial counsel proved ineffective in failing to investigate a statement Petitioner believes was given to the police by his co-defendant the morning of January 12, 2012, several hours before the interview that culminated in Bowers's testimony at trial. Petitioner believes this statement was different than the statement resulting from the afternoon interview. The Appellate Division rejected this claim because Petitioner provided nothing but conjecture that there was any second statement, and even if there was a separate statement, he failed to show that anything in the statement would have benefitted him at trial. The Appellate Division further found no prejudice as counsel ably and extensively cross-examined Bowers as to his statements to the police throughout January 12, 2012.

Petitioner's habeas petition suffers from the same deficiencies relied upon by the Appellate Division. Petitioner has failed to show what, if any, additional information would have been produced by further discovery, and instead relies on his assumption that something useful would have been uncovered. There is no evidence that there was any actual second statement as opposed to one long series of interviews with police as testified to at trial. Petitioner has not shown that counsel would have discovered any additional exculpatory information and he has thus failed to show any prejudice from the alleged failure to investigate. *See, e.g., Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016) (finding failure to investigate a claim requires a comprehensive showing of what would have been obtained through further investigation and how it would have aided the petitioner's case to show prejudice). The Appellate Division's rejection of this claim was thus neither contrary to nor an unreasonable application of *Strickland* and provides no basis for habeas relief.

Petitioner next asserts that counsel proved ineffective in failing to move to dismiss the "duplicitous indictment" against him, which Petitioner believes was improper as it made mention of both threatening another with force and inflicting bodily injury, and thus presented both alternative means of committing armed robbery under New Jersey law. The Appellate Division rejected this claim as without merit. In so doing, and in rejecting Petitioner's sufficiency of the evidence claim on direct appeal, the state courts essentially determined that the indictment was sufficient under state law. Although Petitioner contends the indictment was duplicitous or designed to sow confusion, it clearly presented the crime charged—armed robbery—and gave Petitioner ample opportunity to prepare a defense, and thus comported with state law. *See, e.g., State v. Jeannotte-Rodriguez*, 469 N.J. Super. 69, 103 (App. Div. 2021). Any motion to dismiss the indictment, as "duplicitous" or otherwise, would have been futile, and counsel therefore could

12

not have been ineffective in failing to make such a motion. *Werts*, 228 F.3d at 203. This claim serves as no basis for habeas relief.

In his final claim, Petitioner asserts that appellate counsel proved ineffective during the appeal of his resentencing following the Appellate Division's remanding of his extended term sentence on direct appeal. This is because, Petitioner argues, appellate counsel did not object to the reimposition of restitution, which the trial court had not discussed or directly ordered during the resentencing. The Appellate Division rejected this claim during Petitioner's PCR appeal because the Appellate Division remanded only on a very limited basis so that Petitioner's improper extended term sentence could be corrected to an ordinary term. (ECF No. 18-34 at 19.) The remand did not address the restitution amount, nor had Petitioner challenged that restitution order in his original sentence, resentencing, or in his initial appeal. There was thus no reason for it to be "reimposed" at resentencing—it remained in effect, and any challenge to it would have been without merit during the appeal from Petitioner's resentencing.

The Court finds that the Appellate Division's finding was neither contrary to nor an unreasonable application of *Strickland* insomuch as Petitioner has not shown that his restitution would have been reduced had counsel raised the issue during the appeal of his resentencing. Thus Petitioner cannot show prejudice sufficient to warrant relief. The Court, nevertheless, need not reach the merits of this claim to resolve it. Petitioner's final claim attacks only one portion of his conviction—his restitution order. This Court's habeas jurisdiction is limited to challenges to "custody," which does not include fines, fees, or restitution. *See Kushner v. Att'y Gen. of N.J.*, No. 14-3709, 2017 WL 2999023, at *2 (D.N.J. July 14, 2017); *Kolsanic v. United States*, No. 13-1397, 2016 WL 1382145, at *4 (D.N.J. Apr. 7, 2016); *see also Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003); *United States v. Ross*, 801 F.3d 374, 380-81 (3d Cir. 2015). Challenges to a restitution order are therefore not cognizable in a § 2254 habeas matter. *See Kushner*, 2017

WL 2999023, at *2; *Kolsanic*, 2016 WL 1382145, at *4. This Court thus lacks jurisdiction to provide Petitioner with relief as to his restitution claim even if his claim had been meritorious. Petitioner's restitution claim thus provides no valid basis for habeas relief. As all of Petitioner's claims fail to state a basis for habeas relief, his amended petition is denied.

### IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). "[A petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude [that] the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's habeas claims are without merit for the reasons set forth above, he has failed to make a substantial showing of a constitutional right denial, and his petition is not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

### V. CONCLUSION

In conclusion, Petitioner's amended habeas petition (ECF No. 7) is **DENIED**, and Petitioner is **DENIED** a certificate of appealability. An appropriate order follows.

/s/ Michael A. Shipp<br>
MICHAEL A. SHIPP<br>
UNITED STATES DISTRICT JUDGE